UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERMAINE HARRIS,

    Petitioner,

v.                              Case No. 8:18-cv-1987-MSS-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**O R D E R**

Harris petitions for the writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for lewd and lascivious battery. After reviewing the third amended petition and supplement (Docs. 52 and 75), the response and appendix (Docs. 64 and 74), and the reply (Doc. 82), it is **ORDERED** that the petition is **DENIED**.

**PROCEDURAL HISTORY**

At trial, A.J. testified that she ran away from home. Harris approached A.J. on the street and asked her how old she was. A.J. responded that she was 14 years old. Harris introduced himself as "Mike Harris" and invited A.J. to his friend's home. At the friend's home, Harris engaged in vaginal sex with A.J. Harris and A.J. rode a bus to his mother's home where Harris further engaged in vaginal sex with A.J.

Harris took A.J. shopping and purchased her clothes and hygiene products. Harris rented a hotel room where A.J. and Harris stayed for several days and engaged in vaginal sex several more times. Harris purchased A.J. a mobile telephone that A.J. used to contact her sister. Her sister arranged for A.J. to return home, and A.J.'s mother contacted police.

At the police station, A.J. identified Harris in a photographic lineup and provided a statement to a detective. Also, A.J. identified a tattoo on Harris's stomach which read, "Niggaz." A nurse examined A.J., observed redness and swelling on A.J.'s vagina, and swabbed her cheek and vagina for DNA. The nurse opined that the injuries to A.J.'s vagina were consistent with vaginal sex. A police officer went to the hotel where he found Harris who identified himself as "Mike Williams." Harris eventually provided his real name, agreed to go to the police station, and provided oral and penile swabs for DNA. The officer observed the tattoo on Harris's stomach that A.J. had identified. No relevant DNA or semen was on the swabs from A.J. and Harris. During recorded jail telephone calls with his mother, Harris lamented that he "messed up" and "did some dumba*s sh*t." Harris learned about the victim's examination at the hospital and wondered, "[W]ould that sh*t still show up the night before?"

During the defense's case-in-chief, the detective who interviewed A.J. testified. During the interview, A.J. told the detective that Harris had vaginal sex with her only once and used a condom. A.J. failed to mention riding a bus with Harris, going to his friend's home, and leaving Harris because he pulled her hair and hit her. In closing argument, the defense argued that Harris had met A.J. and purchased clothes and hygiene products for her but never had sex with her. The defense contended that A.J. fabricated her accusations against Harris to avoid getting into trouble with her family for running away.

The jury found Harris guilty of lewd and lascivious battery. (Doc. 64-2 at 72)[1] The trial court sentenced Harris to 30 years in prison as a habitual felony offender and a prison releasee reoffender. (Doc. 64-3 at 79–80) The state appellate court affirmed his conviction and

---

[1] The jury acquitted Harris of a related cocaine possession charge. (Doc. 64-2 at 73)

sentence. (Doc. 64-5 at 47) Harris did not file a motion for post-conviction relief and instead petitioned for ineffective assistance of appellate counsel. The state appellate court denied the petition. (Doc. 64-5 at 245) Harris's federal petition timely follows.

## STANDARDS OF REVIEW

**AEDPA**

Because Harris files his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." 529

U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). An unreasonable application is "different from an incorrect one." 535 U.S. at 694. Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Also, the failure to comply with a state procedural rule governing the proper presentation of a claim generally bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th

4

Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).

A federal court may stay — or dismiss without prejudice — a habeas action to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on state procedural grounds, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

A petitioner may secure excusal of a procedural default on federal habeas review by (1) showing cause for the default and actual prejudice from the alleged violation of federal law or (2) demonstrating a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## DISCUSSION

**Ground One and Ground Two**

In Ground One, Harris contends that a detective interviewed A.J. who said that she had sex with a male named "Mike Williams" and identified "Mike Williams" in a photographic lineup. (Doc. 52 at 5) A.J. further told the detective that "Mike Williams" sold crack cocaine and purchased her a mobile telephone. (Doc. 52 at 5) Harris asserts that

at trial the prosecutor "deliberately abandoned [the detective's] evocations" and violated a "duty to clarify the evidence" discovered during the interview. (Doc. 52 at 5)

In Ground Two, Harris contends that the prosecutor's decision to "abandon[ ]" statements in the detective's report forced trial counsel to elicit an "unambiguous inference" of collateral crimes evidence. (Doc. 52 at 7) Construing the grounds in the *pro se* petition liberally, Harris asserts that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972) by knowingly presenting false testimony. *Williams v. Griswald*, 743 F.2d 1533, 1542–43 (11th Cir. 1984). The Respondent asserts that the grounds are unexhausted and procedurally barred. (Doc. 79 at 16)

Harris contends that he raised this claim on direct appeal and in his ineffective assistance of appellate counsel petition. (Doc. 52 at 6–8) But neither his brief on direct appeal nor his petition on post-conviction contain a *Giglio* claim or any other similar claim based on the same facts. (Doc. 64-5 at 3, 23–29, 66–68, 73) Also, Harris did not file a motion for post-conviction relief, and a substantive claim is separate and distinct from an ineffective assistance of appellate counsel claim. *Pietri v. Fla. Dep't Corrs.*, 641 F.3d 1276, 1289 (11th Cir. 2011). Because Harris failed to give the state court an opportunity to resolve the federal claim, the grounds are unexhausted. *Boerckel*, 526 U.S. at 845. If Harris returned to state court to exhaust the claim, the state court would dismiss the claim as untimely and procedurally defaulted. Fla. R. Crim. P. 3.850(b), (c). Harris neither shows cause and prejudice nor demonstrates a miscarriage of justice to excuse the procedural default. (Docs. 65 and 82) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the grounds are barred from federal review. *Snowden*, 135 F.3d at 736.

Ground One and Ground Two are **DENIED**.

**Ground Three and Ground Four**

In Ground Three, Harris asserts that the state court denied his right to due process and cross-examination by excluding evidence related to incoming and outgoing telephone calls on A.J.'s mobile telephone. (Doc. 52 at 8) In Ground Four, Harris asserts that the evidence seized by the detective retained "precedential value," even though testimony by another detective raised questions about the relevance of the evidence. (Doc. 52 at 10) Harris cites *Avilez v. State*, 50 So. 3d 1189 (Fla. 4th DCA 2010), which held that a computer-generated report showing when a room door in a hotel was unlocked with a key card was not hearsay. (Doc. 52 at 10) Construing Ground Four in the *pro se* petition liberally, Harris asserts that the trial court erred by excluding the log of calls on the telephone. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

At trial during the defense case-in-chief, a detective testified that she collected the telephone that Harris gave A.J. (Doc. 64-4 at 404–05) Trial counsel asked the detective whether she looked at the telephone calls made to and from the telephone and could describe them. (Doc. 64-4 at 405) The trial court sustained the prosecutor's objection based on hearsay. (Doc. 64-4 at 405–14) On direct appeal Harris argued that the trial court erred by excluding the evidence (Doc. 64-5 at 23–29), and the state appellate court affirmed without a written opinion. (Doc. 64-5 at 47) The Respondent contends that Harris failed to alert the state court to the federal nature of his claim and, therefore, the ground is unexhausted and procedurally barred. (Doc. 79 at 22)

In his brief on appeal, Harris argued that the log of calls made to and from the telephone was not hearsay. (Doc. 64-5 at 21–29) Harris neither cited any federal constitutional provision or a case deciding a similar claim on federal grounds nor labeled the issue on appeal

"federal." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Because Harris failed to assert in state court that the evidentiary ruling violated federal law, the ground is unexhausted. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). If Harris returned to state court to exhaust the claim, the state court would dismiss the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Harris neither shows cause and prejudice nor demonstrates a miscarriage of justice to excuse the procedural default. (Docs. 65 and 82) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the grounds are barred from federal review. *Snowden*, 135 F.3d at 736.

Seventy days after the state appellate court issued the decision, Harris filed a *pro se* motion titled "Motion to Vacatur" and for the first time cited federal authorities. (Doc. 64-5 at 53–54) The state appellate court struck the motion and cited *Benjamin v. State*, 32 So. 3d 131 (Fla. 2d DCA 2009), which holds that a *pro se* motion for rehearing is unauthorized if an attorney represents the *pro se* movant. Even if the untimely and unauthorized *pro se* motion alerted the state court to the federal nature of Harris's claim, the state appellate court denied the federal claim on an independent and adequate state law ground which precludes federal review. Fla. R. App. P. 9.330(a)(1). *Judd*, 250 F.3d at 1313. *Johnson v. State*, 974 So. 2d 363, 364–65 (Fla. 2008) (prohibiting "any *pro se* filings submitted by litigants seeking affirmative relief in the context of any criminal proceeding where a death sentence has not

been imposed, whether direct or collateral, either in the trial court or a district court of appeal, and who are represented by counsel in those proceedings.").

Whether the log from A.J.'s telephone was hearsay is an issue of state law, and the trial court concluded that the log was inadmissible hearsay. (Doc. 64-4 at 405–14) A state court's determination of state law receives deference in federal court. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) ("[T]he general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence.") (citations and internal quotations omitted). A petitioner is entitled to relief on federal habeas only if the state court's ruling excluding the evidence renders the trial "fundamentally unfair." *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984).

"Fundamental fairness is violated when the evidence excluded is 'material in the sense of a crucial, critical, highly significant factor.'" *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986). The error must have "'so infused the trial with unfairness as to deny due process of law.'" *Taylor v. Sec'y, Fla. Dep't Corrs.*, 760 F.3d 1284, 1295 (11th Cir. 2014) (quoting *Lisenba v. People of State of Cal.*, 314 U.S. 219, 228 (1941)).

Even if the log of telephone calls was not hearsay, the state court's exclusion of the log did not render Harris's trial fundamentally unfair. The information charged Harris with lewd and lascivious battery and alleged that Harris engaged in sexual activity with a child older than 12 years of age but less than 16 years of age. (Doc. 64-2 at 24)  At trial, the theory of defense was that A.J. fabricated having sex with Harris to avoid getting punished by her parents for running away. (Doc. 64-4 at 466–67) The defense argued that Harris, a 36-year

9

old man, would not have sex with A.J., a 14-year old girl, after revealing to her where his mother lives, his daughter's name, and his last name. (Doc. 64-4 at 463) The defense further argued that Harris likely learned that A.J. had run away from home, purchased her some toiletries and clothes, and told her to go back home. (Doc. 64-4 at 463–64)

At trial, counsel proffered that the log of telephone calls would have shown that A.J. called a telephone number assigned with the name "G" for three minutes and 25 seconds after she reported the crimes to her sister. (Doc. 64-4 at 406–07) Trial counsel further proffered that the letter "G" referred to Harris's first name, Germaine, and showed that A.J. knew Harris's real name. (Doc. 64-4 at 409–10) The proffered evidence was not relevant to any issue at trial and would not have supported Harris's defense.

Even if A.J. had contacted Harris after she reported the crime to her sister, consent was not an available to defense to Harris because of A.J.'s age. § 800.04(2), Fla. Stat. ("Neither the victim's lack of chastity nor the victim's consent is a defense to the crimes proscribed by this section."). Harris does not contend that this evidence was relevant to any other issue.

Even if A.J. knew Harris's real first name, the defense did not dispute identity at trial. A.J. identified Harris, whom she claimed she knew as "Mike Harris," in a photographic lineup prepared by police. (Doc. 64-4 at 221, 248) The prosecutor introduced the photographic lineup into evidence. (Doc. 64-4 at 244–45, 256) During vaginal intercourse with Harris, A.J. observed a tattoo that read "Niggaz" on Harris's stomach. (Doc. 64-4 at 210) Another police officer who took swabs from Harris for DNA observed the same tattoo. (Doc. 64-4 at 311–13) The prosecutor asked Harris to show the tattoo on his stomach to the jury at trial. (Doc. 64-4 at 312) In closing, the defense conceded that A.J.

10

and Harris must have spent time together because A.J. had told police about the unusual tattoo. (Doc. 64-4 at 464) At most, the proffered evidence would have impeached A.J. on a collateral matter. "[The U.S. Supreme Court] has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (italics in original).

Even without the evidence of the log of telephone calls, Harris was able to present his defense. On cross-examination, A.J. testified that she ran away from home because she was mad at her parents. (Doc. 64-4 at 225) When she returned home, she knew that her parents would punish her for running away but her parents did not punish her after she told them what happened. (Doc. 64-4 at 240) Also, during its case-in-chief, the defense impeached A.J. with prior inconsistent statements and material omissions by presenting testimony by the detective who interviewed her. (Doc. 64-4 at 403–04, 414–16) A.J. told the detective that she had sex with Harris once — not six times over ten or eleven days. (Doc. 64-4 at 403, 414–15) Also, A.J. failed to mention going to the friend's home, riding on the bus to his mother's home, and leaving Harris because he pulled her hair and hit her. (Doc. 64-4 at 403–04, 414–16) Relying on this evidence, the defense argued that A.J. was untrustworthy and unbelievable and had a motive to fabricate the accusations against Harris to avoid her parents' punishment for running away.

Even if the letter "G" on the telephone log might have tended to prove that A.J. knew Harris's first name and supported Harris's defense that he would not have sex with A.J. after revealing to her personal identifying information, exclusion of the telephone log did not "[have] [a] substantial and injurious effect or influence in determining the jury's verdict." *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998) (citing *Brecht v. Abrahamson*,

11

507 U.S. 619, 623 (1993)). *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007). *Hittson v. GDCP Warden*, 759 F.3d 1210, 1234–35 (11th Cir. 2014) (measuring the impact of an evidentiary error on the jury by looking at the importance of the witness's testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony on material points, and the overall strength of the prosecution's case).

  The defense showed with other evidence that Harris revealed personal identifying information to A.J., including that (1) he told A.J. his last name, (2) he told her his daughter's name, (3) he showed her where his mother lived, (4) he showed her where his friend lived, (5) he gave her his telephone number which police could have used to trace his identity and location, and (6) he allowed her to see the distinctive tattoo on his stomach. (Doc. 64-4 at 208, 209, 210, 211, 214, 215, 233–35) Also, even though A.J. testified that Harris introduced himself to her as "Mike Harris" and the defense could have impeached A.J. with the telephone log which tended to show that she knew Harris by his real first name "Germaine," the defense impeached A.J. on other more critical matters, as explained above. Lastly, evidence of Harris's guilt was "certainly weighty," considering his incriminating admissions on the recorded jail telephone calls with his mother during which Harris lamented, "I did some dumba*s sh*t," expressed concern about the victim's examination at the hospital, and wondered, "[W]ould that sh*t still show up the night before?" (Doc. 64-4 at 316–18) *Brecht*, 507 U.S. at 638. *Trepal v. Sec'y, Fla. Dep't Corrs.*, 684 F.3d 1088, 1114 (11th Cir. 2012) ("If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . .") (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437–38 (1995)).

Because the defense did not dispute identity, consent was not an available defense, and Harris was able to present his defense even without the log of telephone calls, exclusion of the log did not render Harris's trial fundamentally unfair and the state court did not unreasonably deny the claim. *Lisenba*, 314 U.S. at 236 ("As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."); *Taylor*, 760 F.3d at 1296 (holding that exclusion of testimony that "would not have materially supported Taylor's defense" did not render the trial fundamentally unfair); *Demps*, 805 F.2d at 1431 (holding that exclusion of testimony that was "tangentially directed at impeaching the credibility of a state's witness" did not render the trial fundamentally unfair).

Ground Three and Ground Four are **DENIED**.

**Supplemental Pleading**

Harris asserts that appellate counsel was ineffective for not preparing an adequate appellate brief. (Doc. 75 at 1)[2] He contends that the appellate brief contained a typographical error concerning the detective's testimony on cross-examination which incorrectly depicted the prosecutor representing the detective at trial. (Doc. 75 at 1) Harris further asserts that appellate counsel was ineffective for not seeking review of the state appellate court's decision denying relief on direct appeal. (Doc. 75 at 1) The Respondent asserts that the claims are unexhausted and procedurally barred. (Doc. 79 at 13–15)

---

[2] The Court granted Harris leave to file the supplemental pleading. (Doc. 76)

13

Harris's ineffective assistance of appellate counsel petition contains neither claim. (Doc. 64-5 at 66–68, 73) Because Harris failed to give the state court an opportunity to resolve the federal claims, the grounds are unexhausted. *Boerckel*, 526 U.S. at 845. If Harris returned to state court to exhaust the claims, the state appellate court would dismiss the claims as untimely and successive. Fla. R. App. P. 9.141(d)(5), (6)(C). Harris neither shows cause and prejudice nor demonstrates a miscarriage of justice to excuse the procedural default. (Docs. 65 and 82) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the claims in the supplemental pleading are barred from federal review. *Snowden*, 135 F.3d at 736.

The ineffective assistance of appellate counsel claims are **DENIED**.

**Miscellaneous Motions and Filings**

Harris filed a notice of "default conversion" and asserted that the Respondent failed to comply with the Court's June 8, 2021, Order. (Doc. 80) The Respondent complied with the Order and filed a response to Harris's supplemental pleading. (Doc. 79) He filed another notice of "default conversion" (Doc. 81) and asserted that page numbers on a July 2, 2021 filing appear non-sequential. On that date, the Respondent filed a motion to file a response with excess pages which has appropriate pagination. (Doc. 77) In a motion for clarification, he asserted that record citations in the Respondent's July 6, 2021 response contain discrepancies. (Doc. 85) On that date, the Respondent filed a response which contains proper citations to the state court record in parentheses. An improper pagination or record citation is not a ground for relief on federal habeas. 28 U.S.C. § 2254(a) (authorizing relief on federal habeas "only on the ground that [a person] is in custody in violation of the Constitution or laws or treaties of the United States."). Also, default judgment is not

cognizable on federal habeas. *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987). Harris's construed motions for default judgment (Docs. 80, 81, and 85) are **DENIED**.

Harris files two notices of "punitive proceeding of police" (Docs. 83 and 86), presents paperwork to file criminal charges, contends that the chief of police and a police officer were terminated, and asserts that a district court judge presiding over an unrelated civil rights action failed to rescind their badges. He files a notice to "invoke discretionary jurisdiction," asks the Court to intervene in state criminal proceedings, and issue warrants for arrest. (Docs. 89 and 91) He separately moves for "default conversion," contends that the prosecutors in his case committed crimes, and asks the Court to issue warrants for arrest. (Docs. 88, 90, and 92) Also, he files a "constructive notice," asserts that the police committed crimes, claims that he is a "crime stopper" entitled to a reward, and asks for release to bring criminal charges. (Doc. 92) Harris may not sue in federal court to bring criminal charges. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Harris's construed motions for injunctive relief (Docs. 83, 86, 88, 89, 90, 91, and 92) are **DENIED**.

Accordingly, it is **ORDERED** that Harris's petition (Docs. 52 and 75) is **DENIED** because all claims are either procedurally barred or without merit. The Clerk is **DIRECTED** to enter a judgment against Harris and **CLOSE** this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Harris neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of

appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on September 1, 2021.

*/s/ Mary S. Scriven*
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE